

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00308-CV

PINERIDGE ASSOCIATES, L.P.
AND LAC PROPERTIES
OPERATING PARTNERSHIP, L.P.

APPELLANTS

V.

RIDGEPINE, LLC

APPELLEE

----------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

## I. Introduction

Appellants Pineridge Associates, L.P. and LAC Properties Operating Partnership, L.P. (collectively, Appellants)[1] appeal the trial court's judgment in favor of Appellee Ridgepine, L.L.C. (Ridgepine) following a bench trial.

----

[1]When appropriate, we refer to Pineridge Associates, L.P. as Pineridge and LAC Properties Operating Partnership, L.P. as LAC Properties.

Appellants contend in nine issues that the trial court erred by incorrectly interpreting a note and deed of trust, by finding that an event of default triggered Appellants' personal liability for a deficiency on the note and deed of trust, by finding that a deficiency existed, and by awarding attorney's fees to Ridgepine. We affirm.

## II. Background

### A. The Note, Deed of Trust, and Default

The dispute in this case concerns the mortgage for an apartment complex in Arlington, Texas, known as the Pineridge Apartments (the Property). Pineridge executed a Multi-Family Note (Note) on June 11, 2001, in the original principal amount of $2,700,000. The Note was secured by a Multi-Family Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Deed of Trust).[2] That same day, the Pineridge Mortgage was assigned to Federal Home Loan Corporation (Freddie Mac). In 2003, Freddie Mac consented to the replacement of Pineridge's operating general partner through a reaffirmation of the Pineridge Mortgage, and LAC Properties executed a limited guaranty in connection with the reaffirmation.

Pineridge defaulted on the Pineridge Mortgage on January 1, 2007, by failing to pay the December 2006 installments of principal and interest. In addition, Pineridge's financial difficulties led to the filing of approximately

---

[2]We refer to the Note and Deed of Trust collectively as the Pineridge Mortgage.

$127,000 in mechanic's liens against the Property between August 2006 and May 2007.

In April 2007, Ridgepine paid Freddie Mac $2,500,000 to purchase the Pineridge Mortgage, and Freddie Mac assigned the Pineridge Mortgage to Ridgepine. Ridgepine then filed suit against Pineridge on May 1, 2007, seeking a temporary restraining order and the appointment of a receiver pending Ridgepine's attempt to sell the Property at foreclosure.[3] Ridgepine then foreclosed on the Property and placed the highest bid for the property— $2,752,827.50—at the June 5, 2007 foreclosure sale.

## B. Nonrecourse Loan with Exceptions Creating Personal Liability

The Note and Deed of Trust was a nonrecourse loan with limited exceptions that, if applicable, made Appellants personally liable for any deficiency. In this regard, Paragraph 9(a) of the Note stated:

> Except as otherwise provided in this Paragraph 9, [Appellants] shall have no personal liability under this Note, the Security Instrument or any other Loan Document for the repayment of the Indebtedness or for the performance of any other obligations of [Appellants] under the Loan Documents, and [Ridgepine]'s only recourse for the satisfaction of the Indebtedness and the performance of such obligations shall be [Ridgepine]'s exercise of its rights and remedies with respect to the Mortgaged Property and any other collateral held by [Ridgepine] as security for the Indebtedness.

Relevant to this appeal, Paragraph 9(e) provided:

---

[3]Ridgepine did not seek personal liability against Appellants in its original petition.

3

[Appellants] shall become personally liable to [Ridgepine] for the repayment of all of the Indebtedness upon the occurrence of any of the following Events of Default: . . . (2) a Transfer (including, but not limited to, a lien or encumbrance) that is an Event of Default under Section 21 of the [Deed of Trust].

Section 21(a) of the Deed of Trust in turn defined an "Event of Default" as, among other things, "a transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property." However, the Deed of Trust excepted certain transfers and, in Section 21(b), specifically stated:

The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of Section 21(a) to the contrary:

. . . .

(6) the creation of a mechanic's, materialman's, or judgment lien against the Mortgaged Property which is *released of record or otherwise remedied to [Ridgepine]'s satisfaction within 30 days of the date of creation*. [Emphasis added.]

Ridgepine's third amended petition alleged personal liability against Appellants for the deficiency because the mechanic's liens were not "released of record or otherwise remedied to [Ridgepine]'s satisfaction within 30 days of the date of creation." Appellants defended the personal liability claim at trial by arguing that the foreclosure sale extinguished all mechanic's liens, that the mechanic's liens were therefore "released of record," and that Ridgepine was prohibited from

4

seeking personal liability because it had not invoked the Event of Default relating to the mechanic's liens "during the existence of [the] Event of Default."[4]

## C. Trial Court's Findings of Fact, Conclusions of Law, and Judgment

Following a bench trial, the trial court signed a judgment in favor of Ridgepine and against Appellants for $146,615.40 and attorney's fees. The trial court also made findings of fact and conclusions of law. Among other things, the trial court found that: (1) Pineridge defaulted under the Note and Deed of Trust; (2) there was a deficiency of $146,615.40 following the foreclosure sale; (3) Pineridge "allowed numerous mechanic's liens to be placed on the Property prior to the foreclosure of the Property"; (4) the mechanic's liens "were not released of record or otherwise remedied to [Ridgepine's] satisfaction within 30 days of the date of creation as required by the Deed of Trust"; and (5) Appellants "are personally liable to [Ridgepine] in the amount of the deficiency after foreclosure of $146,615.40." In addition, the trial court made a conclusion of law that "mechanic's liens are not automatically released of record after a foreclosure." This appeal followed.

---

[4]Section 43 of the Deed of Trust provided that Ridgepine, "[a]t any time during the existence of an Event of Default," could "declare the Indebtedness to be immediately due and payable without further demand" and "invoke the power of sale and any other remedies permitted by Texas law or provided in this Instrument or in any other Loan Document."

5

## III. Event of Default

In their first five issues, Appellants contend that the trial court erred by incorrectly interpreting the Note and Deed of Trust, by finding that the mechanic's liens were not released of record by virtue of the foreclosure sale, by finding them personally liable for the deficiency, and by entering judgment against them. Because they are related, we address Appellants' first five issues together.

### A. Standard of Review

The construction of an unambiguous contract is a question of law for the court to determine de novo. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009). We examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We interpret the contract by ascertaining the true objective intentions of the parties, based on the contract language, and presuming that the parties intended every clause to have some effect. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005); *Heritage Res., Inc.*, 939 S.W.2d at 121. We give words their plain, common, or generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res., Inc.*, 939 S.W.2d at 121.

### B. Recourse and Nonrecourse Loans Distinguished

A recourse loan "allows the lender, if the borrower defaults, not only to attach the collateral but also to seek judgment against the borrower's (or

guarantor's) personal assets." Black's Law Dictionary 1021 (9th ed. 2009). Conversely, the maker of a nonrecourse loan "does not personally guarantee repayment of the note and will, thus, have no personal liability." *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). "A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note." *Id.* (citing *Burns v. Resolution Trust Corp.*, 880 S.W.2d 149, 153 (Tex. App.—Houston [14th Dist.] 1994, no writ) and *Hinckley v. Eggers*, 587 S.W.2d 448, 450 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.)). In other words, under a true nonrecourse loan, the borrower has no personal liability beyond the loss of the collateral securing the note. *Id.* The Deed of Trust involved in this case is a nonrecourse loan with several exceptions that, if applicable, allow Ridgepine to seek personal liability against Appellants.

## C. Analysis

Section 43 of the Deed of Trust provided that Ridgepine could "invoke the power of sale and any other remedies permitted by Texas law" or the Deed of Trust "[a]t any time during the existence of an Event of Default." Relevant to this appeal, and as previously noted, one Event of Default triggering personal liability under section 21(b) of the Deed of Trust is a mechanic's lien that was not "released of record or otherwise remedied to Lender's satisfaction within 30 days of the date of creation." The question presented is whether the mechanic's liens were "released of record" when they were extinguished by the June 2007

7

foreclosure sale. If the mechanic's liens were released of record by the foreclosure sale, then Appellants can have no personal liability under the Deed of Trust because the mechanic's liens were "released of record" before Ridgepine invoked them as an Event of Default.

## 1. Foreclosure Sale Did Not Release Liens "Of Record"

The parties do not dispute that the mechanic's liens were extinguished by the foreclosure sale or that they were thereafter unenforceable as a matter of law. *See Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 806 (Tex. 1978) ("[T]he foreclosure sale of the senior lien extinguishe[s] the junior lien."); *Conseco Fin. Servicing Corp. v. J & J Mobile Homes, Inc.*, 120 S.W.3d 878, 883 (Tex. App.—Fort Worth 2003, pet. denied) ("Following the valid foreclosure of a senior lien, junior liens, if not satisfied from the proceeds of sale, are extinguished."). The parties do dispute, however, whether the extinguishment of a mechanic's lien via a foreclosure sale is synonymous with the mechanic's lien being "released of record."

Appellants argue that the mechanic's liens were released of record when they were extinguished by the June 2007 foreclosure sale, but they offer no authority supporting the argument. Rather, they assume that "extinguished" and "released of record" are synonymous. We disagree, and in doing so, we refer to property code section 53.157, the Texas Title Examination Standards, the common legal meaning of "of record," and the specific language the parties used in the Deed of Trust.

8

First, property code section 53.157 lists six ways that a mechanic's lien "may be discharged of record."[5]  Tex. Prop. Code Ann. § 53.157 (Vernon 2007). One way is to file a lien release; four others require filing a bond or other document in the county deed records.  *See id.* § 53.157(1), (3)–(6).  The sixth way a mechanic's lien may be discharged of record—and the only way to do it under section 53.157 without filing a document in the county deed records—is by failing to initiate suit to foreclose the lien within the applicable statute of limitations.  *See id.* § 53.157(2).  Appellants argue that the extinguishment of the mechanic's liens by foreclosure sale is analogous to this latter provision.  *See id.* But while neither the extinguishment of a junior lien through foreclosure nor the failure to file suit within the statute of limitations requires the filing of a document reflecting the unenforceability of the lien, the legislature chose not to include extinguishment through foreclosure in section 53.157.  *See City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 636 (Tex. App.—Fort Worth 2003, pet. denied) ("We must presume that the legislature chose its words carefully, recognizing that every word in a statute was included for some purpose and that every word excluded was omitted for a purpose.").  And as noted in Appellants' brief, the rule that foreclosure extinguishes junior liens has been part of Texas law since at least 1890.  Applying the relevant rules of statutory construction, we must presume that the legislature was aware of this well-established rule and

---

[5]According to Black's Law Dictionary, "discharge" and "release" are synonymous.  Black's Law Dictionary 530, 1403 (9th ed. 2009).

9

chose not to include the extinguishment rule in the statutory list. *See id.*; s*ee also Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh'g) ("Contracts are presumed to incorporate regulations and laws existing at the time of execution.). Thus, we are not persuaded that the extinguishment of a mechanic's lien through foreclosure is equivalent to a lien that has been "discharged of record" by failing to file suit within the applicable statute of limitations.

Moreover, "of record" has a commonly understood legal meaning. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, No. 05-1076, 2010 WL 5133461, at *12 (Tex. Dec. 17, 2010) ("It is a well recognized canon of construction that technical words are to be interpreted as usually understood by persons in the business to which they relate, unless there is evidence that the words were used in a different sense."). Black's Law Dictionary defines "of record" to mean "recorded in the appropriate records." Black's Law Dictionary 1196 (9th ed. 2009). In addition, Texas courts have long used the terms "of record" or "for record" to denote that a document has been made a part of the public record by filing the document in the appropriate place.[6] *See Keel v. Hoggard*, 590 S.W.2d 939, 941 (Tex. Civ. App.—Waco 1979, no writ) (noting that a release of lien "was

---

[6]We also note that property code section 53.152(a) requires a lienholder, once the debt has been paid, to provide a release of lien within ten days of a written request and that section 53.152(b) requires that the release "be in a form that would permit it to be filed *of record.*" Tex. Prop. Code Ann. § 53.152 (Vernon 2007) (emphasis added).

filed for record"); *Pereira v. Gulf Elec. Co.*, 343 S.W.2d 334, 335 (Tex. Civ. App.—Waco 1960, writ ref'd n.r.e.) (noting both that a deed and lien were filed "for record" and that money from the sale of property was held in escrow until a lien "could be released of record by judgment or payment"); *Stewart Abstract Co. v. Judicial Comm'n of Jefferson Cnty.*, 131 S.W.2d 686, 688 (Tex. Civ. App.—Beaumont 1939, no writ) (quoting from title opinion admitted into evidence, which referred to a plat being "of record in the office of the County Clerk" and to a release having been "not released of record" even though it was barred by limitations); *Tippit v. Nettleton*, 100 S.W.2d 409, 410 (Tex. Civ. App.—El Paso 1936, no writ) (reciting the plaintiff's contention that "various liens [were] shown of record and not released of record"). The commonly understood meaning of "of record" thus suggests that the extinguishment of the mechanic's liens via foreclosure is not synonymous with releasing the liens "of record."

Appellants cite the Texas Title Examination Standards and argue that a lien can be released of record even when a document has not been filed to reflect the release. *See* Tex. Prop. Code Ann. Tit. 2, App., Standard 1.10 (Vernon Supp. 2010) (providing that a title opinion "should advise an examiner's client of all irregularities, defects, and encumbrances . . . that may expose the owner to litigation or adverse claims[,] even if the litigation or adverse claims can reasonably be expected to be successfully defended"); *id.*, Standard 15.10 (Vernon Supp. 2010) (providing that a title examiner "need not identify a lien that is barred by limitations or is otherwise unenforceable"). However, the title

11

examination standards are not statutory law. *See id.*, Preface. Rather, they are a "collective consensus" of attorney members of the Real Estate; Probate and Trust Law; and Oil, Gas, and Energy Resources sections of the State Bar of Texas. *See id.*, Disclaimer and Introduction. Moreover, while Standard 15.10 provides that a title examiner "need not identify a lien that is barred by limitations or is otherwise unenforceable," the standard does not resolve or even address the specific issue presented here—whether the mechanic's liens were "released of record" when they were rendered unenforceable by the foreclosure sale. *See id.*, Standard 15.10. The standard addresses only what a prudent title examiner should, in the opinion of certain practitioners, include in a title opinion. *See id.*

Finally, looking to the specific contractual language, the Deed of Trust excludes a mechanic's lien from the definition of an Event of Default only if the lien was "released of record or otherwise remedied to Lender's satisfaction within 30 days of the date of creation." Although the extinguishment through foreclosure rendered the mechanic's liens unenforceable, the Deed of Trust does not exclude from an Event of Default liens that have been extinguished or otherwise rendered unenforceable. Rather, the parties chose to limit the lien exclusion to only those liens that were "released of record or otherwise remedied to Lender's satisfaction." Thus, even though the extinguishment through foreclosure rendered the mechanic's liens unenforceable, the contract language does not support Appellants' contention that extinguishing the mechanic's liens through the foreclosure sale is synonymous with the liens being released of

12

record.[7]  *See, e.g.*, *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 791 (Tex. App.—Dallas 2005, no pet.) (rejecting interpretation of contract because doing otherwise "would require [the court] to inject meaning not expressed in the words chosen by the parties and placed within the four corners of the agreement").  Because the Deed of Trust language does not exempt from an Event of Default permitting personal liability any mechanic's liens that have been rendered unenforceable, we are not persuaded that the extinguishment of a mechanic's lien through foreclosure is synonymous with releasing the lien of record.  We hold that the mechanic's liens were not automatically released of record when they were extinguished through the foreclosure sale.[8]

---

[7]Indeed, Ridgepine encountered difficulty obtaining title insurance for the Property when it attempted to refinance in March 2008, well after the June 2007 foreclosure sale extinguished the mechanic's liens.  Ridgepine presented evidence that it was required to deposit money into an escrow account before it could obtain title insurance and that the mechanic's liens caused the escrow requirement.

[8]Appellants also argue that the trial court incorrectly interpreted the contract language by requiring the mechanic's liens to be released of record within thirty days of creation, contending that the "within thirty days of creation" language applies only to mechanic's liens that are "otherwise remedied to Lender's satisfaction," not to mechanic's liens that are released of record. Appellants' argument is, however, based on their assumption that the foreclosure sale caused the mechanic's liens to be released of record.  Because we have held otherwise, we need not decide whether the "within thirty days of creation" language applies only to the "otherwise remedied to Lender's satisfaction" language.  *See* Tex. R. App. P. 47.1.

13

## 2. Ridgepine Invoked Liens During Existence of Default

Having held that the mechanic's liens were not automatically released of record when they were extinguished through the foreclosure sale, we next determine whether Ridgepine invoked the mechanic's liens as a basis for personal liability during the existence of the Event of Default.

The mechanic's liens were filed against the Property between August 2006 and May 2007, and the June 2007 foreclosure sale rendered the mechanic's liens unenforceable. *See Diversified*, 576 S.W.2d at 806. Ridgepine knew about the mechanic's liens when it purchased the Pineridge Mortgage from Freddie Mac, but Ridgepine did not seek personal liability based on the mechanic's liens in its May 2007 original petition. Appellants argue that Ridgepine could have invoked the mechanic's liens as an Event of Default prior to the foreclosure sale and that after the foreclosure sale, the mechanic's liens no longer qualified as an Event of Default because they were extinguished and no longer existed. But their argument is again premised on the incorrect assumption that the mechanic's liens were "released of record" when they were extinguished in the foreclosure sale. As we held above, the foreclosure sale did not release the mechanic's liens of record, even though the foreclosure sale rendered the liens unenforceable. Furthermore, Appellants could have discharged the liens of record, and therefore precluded Ridgepine from successfully claiming personal liability against them, by filing a bond pursuant to property code section 53.171. *See* Tex. Prop. Code Ann. §§ 53.171–.175 (Vernon 2007) (permitting "any

14

person" to file a bond indemnifying against a mechanic's lien); *see also id.* § 53.157(4) (providing that the filing of a bond pursuant to section 53.171 discharges the lien "of record").

The Deed of Trust excludes mechanic's liens from the definition of an Event of Default only if the mechanic's liens are "released of record or otherwise remedied to Lender's satisfaction."[9] In its April 2008 amended petition, Ridgepine invoked the mechanic's liens as an Event of Default permitting personal liability against Appellants. It is undisputed that lien releases were never filed. Because lien releases were never filed, the failure to release the mechanic's liens of record means the mechanic's liens continued to qualify as an Event of Default as of April 2008, and Ridgepine invoked the mechanic's liens as an Event of Default "during the existence of an Event of Default." We therefore hold that Ridgepine invoked the mechanic's liens as an Event of Default during the existence of the default, permitting personal liability against Appellants. We overrule Appellants' first five issues.

## IV. Sufficient Evidence of Amount of Deficiency

Appellants assert in their sixth and seventh issues that the evidence is legally insufficient to support the trial court's findings that a deficiency exists and that the deficiency is $146,615.40.

---

[9]Appellants contend only that the extinguishment of the mechanic's liens through the foreclosure sale is synonymous with releasing the liens of record; they do not contend that the mechanic's liens were "otherwise remedied to [Ridgepine]'s satisfaction."

## A. Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

## B. Analysis

Appellants challenge four components of the trial court's deficiency calculation—prepayment premium, legal fees, prorated property taxes, and compound interest—and argue that because no evidence supports each of those four components, there is no resulting deficiency. We address each component in turn.

### 1. Prepayment Premium

Section 10(a)(2) of the Note required Appellants to pay Ridgepine the entire outstanding unpaid principal balance, all accrued interest, and a prepayment premium. Section 10(c)(1) of the Note sets forth the calculation of the prepayment premium. Part of the prepayment premium calculation requires the input of an "assumed reinvestment rate," which is, for purposes of this case,

17

one-twelfth of the yield rate for a "non-callable Treasury Security" maturing in 2011 "with the lowest yield published in *The Wall Street Journal* as of the applicable date." Appellants do not dispute that the applicable date is May 29, 2007. Rather, Appellants argue that Ridgepine "relied upon a T-bill yield rate which was published in the *Wall Street Journal* on May 29, 2007, rather than the May 29, 2007 rate which would have been published on May 30, 2007," meaning there is no evidence of the proper calculation of the prepayment premium. However, the trial exhibit containing the yield rate was obtained from the *Wall Street Journal*'s website and contains a statement that the May 29, 2007 rates "are from midafternoon." Moreover, the trial exhibit has a footer indicating that it was printed on May 30, 2007, suggesting that it was indeed the May 29, 2007 rate published on May 30, 2007. There is more than a scintilla of evidence that Ridgepine relied on the correct yield rate when calculating the prepayment premium.

### 2. Legal Fees

The trial court's deficiency finding includes $35,000 in legal fees. Appellants argue that there is no evidence to support $35,000 in legal fees because Ridgepine's representative, Kevan Acord, admitted the $35,000 amount was an estimate made before the foreclosure sale and "testified at trial to multiple different figures for actual fees that were incurred." They further argue that Ridgepine cannot recover fees incurred before it purchased the Note or after

foreclosure and that Ridgepine offered no evidence that the fees it incurred were reasonable and necessary.

Section 11 of the Note states:

**Costs and Expenses.** To the fullest extent allowed by applicable law, [Appellants] shall pay all expenses and costs, including fees and out-of-pocket expenses of attorneys (including [Ridgepine]'s in-house attorney's) and expert witnesses and costs of investigation, incurred by [Ridgepine] as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding.

Ridgepine argues that it offered legally sufficient evidence to support the $35,000 in legal fees because Acord testified that the legal fees actually exceeded $44,000, the Note does not limit its ability to recover legal fees incurred before purchasing the note or after foreclosure, and the Note does not require evidence that the legal fees are reasonable and necessary.

We agree with Ridgepine. The Note permits recovery of all legal fees incurred and does not require proof that the legal fees were reasonable and necessary, nor does the Note prevent Ridgepine from recovering legal fees incurred before purchasing the Note or after foreclosure, so long as they were incurred "as a result of any default," "in connection with efforts to collect any amount due," or "to enforce the provisions of" the other loan documents. And contrary to Appellants' contention, Acord did not agree during his trial testimony that Ridgepine could not recover legal fees incurred before purchasing the Note

19

or after the foreclosure sale. Rather, he testified that all of the legal fees Ridgepine incurred were in furtherance of foreclosure and collection of the debt. Moreover, although Acord testified that Ridgepine incurred more than $44,000 in legal fees, he also testified about the $35,000 amount used to calculate the deficiency, and $15,000 and $25,000 in fees charged by his and another law firm. Thus, the trial court's finding of $35,000 in legal fees is within the range of evidence presented at trial. *See State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 321 (Tex. App.—San Antonio 2002, pet. denied) ("It is fundamental that a jury may blend the evidence admitted before it and believe all, some or none of a witness's testimony."), *abrogated on other grounds by Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 27 (Tex. 2008). We hold that there is more than a scintilla of evidence of $35,000 in legal fees.

### 3. Prorated Property Taxes

The trial court included $21,168.12 in prorated annual property taxes in its deficiency calculation. Sections 12 and 15 of the Deed of Trust provide that if Appellants failed to pay any taxes "when due," Ridgepine could pay the taxes and that "any amounts *disbursed* by [Ridgepine] . . . shall be added to, and become part of, the principal component of the Indebtedness." [Emphasis added.] Appellants argue that Ridgepine did not actually pay the prorated annual property taxes before the foreclosure sale and that, therefore, Ridgepine cannot collect the unpaid property taxes under sections 12 and 15. However, the annual property taxes were not "due" before the June 2007 foreclosure sale. Thus,

there was no reason for Ridgepine to pay them. Rather, Appellants were required to, but did not, deposit amounts in escrow on a monthly basis to pay the property taxes, meaning that there was not sufficient money in escrow for Ridgepine to use when paying the annual property taxes when they later became due. Section 11 of the Note expressly permits Ridgepine to recover all costs and expenses incurred "as a result of any default under th[e] Note . . . or to enforce the provisions of any of the other Loan Documents." There is more than a scintilla of evidence that Ridgepine incurred an expense within the scope of section 11 when it paid the property taxes with its own money because Appellants failed to deposit funds into escrow prior to foreclosure.

### 4. Compound Interest

Appellants next argue that the evidence demonstrated that compound interest was not to be included in the deficiency calculation. They specifically argue that a trial exhibit indicates that Freddie Mac represented "as of March 27, 2007, [that] the unpaid principal balance of the Note was $2,523,310, an amount that did not include compounded interest." However, paragraph 3(c) of the Note specifically provides that Ridgepine had the discretion to compound any interest that remained past due for thirty days or more. Freddie Mac's representation of the principal amount due in March 2007 does not alter Ridgepine's right under the Note's terms to compound the interest at its discretion. We hold that there is

legally sufficient evidence to support the trial court's use of compounded interest in calculating the deficiency.[10]

### 5. Resulting Deficiency

Finally, Appellants assert that because there is no evidence to support the prepayment premium, legal fees, prorated property taxes, and compound interest components of the deficiency calculation, there is no evidence of a deficiency. But we have held that there is more than a scintilla of evidence to support each of these components of the deficiency calculation. Therefore, we necessarily hold that legally sufficient evidence supports the trial court's finding of a deficiency of $146,615.40. We overrule Appellants' sixth and seventh issues.

## V. Attorney's Fees

Appellants argue in their eighth and ninth issues that if we reverse the trial court's judgment, we must also reverse the attorney's fee award to Ridgepine and award attorney's fees to Appellants because Ridgepine is no longer the prevailing party and because Appellants made a pretrial offer of settlement. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (providing that a party must "prevail on a cause of action for which attorney's fees are recoverable" and "recover damages" to be entitled to attorney's fees under civil practice and

---

[10]Appellants argue for the first time in their reply brief that Ridgepine was required to prove that it exercised its discretion in good faith and that Ridgepine failed to do so. Appellants waived this contention by raising it for the first time in their reply brief. *See Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.— Houston [14th Dist.] 2009, pet. denied).

remedies code section 38.001); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 42.004 (Vernon 2008) (requiring recovery of litigation costs for party making qualifying settlement offer); Tex. R. Civ. P. 167.4 (same).  However, because we overruled Appellants' first seven issues, we necessarily overrule their eighth and ninth issues.

## VI.  Conclusion

Having overruled each of Appellants' nine issues, we affirm the trial court's judgment.


ANNE GARDNER
JUSTICE

PANEL:  GARDNER and MCCOY, JJ; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  March 17, 2011

23