02-09-380-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-09-00380-CV

 

 


 
 
 Roger K. Parsons, Individually and as the
 Independent Administrator for the Estate of Esther Ann Kartsotis Parsons
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Lisa A. Blue Baron as Executrix of the Estate of
 Frederick M. Baron and Baron & Budd, P.C.
 
 
  
 
 
 APPELLEES
 
 


 

----------

 

FROM THE 17th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          Appellant
Roger K. Parsons, Individually and as the Independent Administrator for the
Estate of Esther Ann Kartsotis Parsons (Parsons), appeals the trial court’s
summary judgment against him and in favor of Appellees Lisa A. Blue Baron as
Executrix of the Estate of Frederick M. Baron and Baron & Budd, P.C.
(collectively, Baron & Budd).  In sixteen issues, Parsons challenges the
summary judgment for Baron & Budd and also contends that the trial court
judge should have been disqualified.  We affirm.[2]

II. 
Background

          In
November 1991, Parsons retained Windle Turley and Windle Turley, P.C.
(collectively, Turley) to represent him in wrongful death and survival actions
in connection with the death of his wife (the DuPont Litigation).  A jury
returned a verdict for Parsons awarding him $4.75 million in damages and also
awarding punitive damages.  The trial court granted judgment notwithstanding
the verdict on the punitive damages but signed a $4.75 million judgment for
Parsons.

In
July 1996, Parsons retained Robert Greenberg to sue Turley for legal
malpractice (the Turley Litigation) relating to Turley’s representation of him in
the DuPont Litigation.  The trial court granted summary judgment for Turley,
and the Dallas Court of Appeals affirmed the summary judgment on limitations
grounds because Turley was not served with citation prior to the expiration of
the statute of limitation.  See Parsons v. Turley, 109 S.W.3d 804,
808–10 (Tex. App.—Dallas 2003, pet. denied).

In
the meantime, Parsons retained a new attorney and filed the instant legal
malpractice suit against Greenberg and Motsenbocker (who Parsons had hired at
Greenberg’s suggestion) for their representation in the Turley Litigation.  Acting
pro se, Parsons subsequently added Baron & Budd as additional defendants.[3] 
Baron & Budd then filed no-evidence and traditional motions for summary
judgment as to each cause of action Parsons had asserted against it. Parsons
filed at least three pro se responses to the motions, only two of which were
timely.[4]  The trial court granted
summary judgment for Baron & Budd without stating the grounds and later severed
the summary judgment for Baron & Budd from the underlying cause.  Parsons thereafter
perfected this appeal. 

III. 
Standard of Review

A. 
Traditional Summary Judgment

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light
most favorable to the nonmovant, crediting evidence favorable to the nonmovant
if reasonable jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim.  Frost Nat’l Bank v. Fernandez,
315 S.W.3d 494, 508 (Tex. 2010), cert. denied, 131 S. Ct. 1017 (2011); see
Tex. R. Civ. P. 166a(b), (c).

B. 
No-Evidence Summary Judgment

          After
an adequate time for discovery, the party without the burden of proof may,
without presenting evidence, move for summary judgment on the ground that there
is no evidence to support an essential element of the nonmovant’s claim or
defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence.  Id.; Timpte Indus., Inc. v.
Gish, 286 S.W.3d 306, 310 (Tex. 2009).  The trial court must grant the
motion unless the nonmovant produces summary judgment evidence that raises a
genuine issue of material fact.  See Tex. R. Civ. P. 166a(i) & cmt.;
Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).

When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d
291, 292 (Tex. 2006).  We review a no-evidence summary judgment for evidence
that would enable reasonable and fair-minded jurors to differ in their
conclusions.  Hamilton, 249 S.W.3d at 426 (citing City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to
the nonmovant if reasonable jurors could, and we disregard evidence contrary to
the nonmovant unless reasonable jurors could not.  Timpte Indus., 286
S.W.3d at 310 (quoting Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582
(Tex. 2006)).  If the nonmovant brings forward more than a scintilla of
probative evidence that raises a genuine issue of material fact, then a
no-evidence summary judgment is not proper.  Smith v. O’Donnell, 288
S.W.3d 417, 424 (Tex. 2009); King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 751 (Tex. 2003), cert. denied, 541 U.S. 1030 (2004).

IV. 
Summary Judgment

          Parsons
challenges the trial court’s summary judgment on his claims for negligence,
respondeat superior, breach of fiduciary duty, fraud, and unjust enrichment.[5] 
We address each claim in turn.

A. 
Negligence

Parsons
contends in his first seven issues that the trial court erred by granting
summary judgment on his negligence claims against Baron & Budd.[6]
Baron & Budd responds that Parsons failed to present evidence of an
attorney-client relationship between himself and Baron & Budd.

1. 
Applicable Law

A
plaintiff in a legal malpractice suit must prove that (1)
the attorney owed the plaintiff a duty, (2) the attorney breached that duty,
(3) the breach proximately caused the plaintiff’s injuries, and (4) damages occurred.
 Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex. 1995); Stancu
v. Stalcup, 127 S.W.3d 429, 433 (Tex. App.—Dallas 2004, no pet.).  An
attorney owes a duty of care only to his or her client, not to third parties
who may have been damaged by the attorney’s negligent representation of the
client.  Barcelo v. Elliott, 923 S.W.2d 575, 578 (Tex. 1996) (preserving
a bright-line privity rule denying a cause of action to all estate
beneficiaries whom the attorney did not represent).  Under Texas law, attorneys
are not ordinarily liable for damages to nonclients because there is no privity
of contract.  Am. Centennial Ins. Co. v. Canal Ins. Co., 843 S.W.2d 480,
484 (Tex. 1992).    

          The
attorney-client relationship may be expressly created through a contract, or it
may be implied from the actions of the parties.  Bright v. Addison, 171
S.W.3d 588, 596 (Tex. App.—Dallas 2005, pet. denied); Honeycutt v.
Billingsley, 992 S.W.2d 570, 581 (Tex. App.—Houston [1st Dist.] 1999, pet.
denied).  To establish an attorney-client relationship, the parties must
explicitly or by their conduct manifest an intention to create it.  Roberts
v. Healey, 991 S.W.2d 873, 880 (Tex. App.—Houston [14th Dist.] 1999, pet.
denied) (citing Vinson & Elkins v. Moran, 946 S.W.2d 381, 405 (Tex.
App.—Houston [14th Dist.] 1997, writ dism’d by agr.)).  Whether there was a
meeting of minds between the parties to create an attorney-client relationship
is determined under an objective standard examining what the parties said and
did, not by the parties’ subjective states of mind.  Bright, 171 S.W.3d
at 596; Roberts, 991 S.W.2d at 880; Moran, 946 S.W.2d at 405.  

          2. 
Applicable Facts 

          Parsons’s
July 20, 2009 amended response to Baron & Budd’s motion for summary
judgment relied on two items of summary judgment evidence that are relevant to
this appeal:  Parsons’s affidavit and excerpts from the deposition of Sidney K.
Powell.[7]

Parsons
testified by affidavit that he hired Sidney K. Powell and S. Ann Saucer in
December 1995 as legal counsel on appeal in the DuPont Litigation.  At the
time, Parsons learned that Powell and Saucer were working with Baron & Budd
on the appeal of a case pending before the Fifth Circuit (the Ahearn
case). Parsons testified that he attended the oral argument in the Fifth Circuit
case.  Parsons continued, 

Following the oral
arguments, Baron invited me to lunch with his appellate team that included my
attorneys Powell and Saucer.  Over lunch I told Baron about my complaints with
the Turley Defendants and thanked him for his diligence in the Ahearn
case.

 

          I trusted
and confided in Baron because Powell and Saucer, with whom I had a[n]
attorney-client relationship, advised me that they trusted and confided in both
Baron and Baron’s wife . . . 

 

Parsons’s
affidavit also stated that he had informed Powell that “it was [his] intention
to hire a lawyer having Baron’s qualities and capabilities who was willing and
able to investigate and prosecute all of my viable claims against the Turley
Defendants.”

Other
arguably relevant averments from Parsons’s affidavit are:

●  In July
1996, the Barons, based upon what I had told Baron and what Powell had told
Baron and Blue[,] referred me to me [sic] to their friend and personal lawyer
Robert M. Greenberg (“Greenberg”) to handle the claims that I wanted
investigated and prosecuted.

 

●  In July
1996, Greenberg agreed to work on my case, and by December 1996, Greenberg
enthusiastically advised me to hire F. Clif Cameron (“Cameron”), a private
investigator who also did considerable work for [Baron & Budd], as a
necessary step toward discovering evidence that had been hidden or destroyed
[in the DuPont litigation].

 

●  Baron
represented that his personal lawyers would handle this case.  I trusted Baron
and considered him to be a skilled lawyer, and one who was very interested in
justice.

 

● I understood
that the Barons’ referral was a material representation to me that Greenberg’s
expertise and experience qualified him to handle my cases.

 

●  I was
advised by [Greenberg and Motsenbocker] that they worked closely with Fred
Baron and that they would do my case.  Baron also told me that.  They
represented that they could jointly handle a case against Turley and that
however it would be necessary to work as a team, and the team was an enterprise
consisting of the Greenberg/Motsenbocker Defendants, Fred Baron, Baron and
Budd[,] and the investigator, Clif Cameron.

 

●  My attorneys
also represented that they were an enterprise and by working with them, we were
going to get the benefit of the Baron resources and alliance.  Greenberg
represented that he was Fred Baron’s lawyer.

 

●  My attorneys
represented that Attorney-Greenberg was corporate counsel for Baron.

 

          Powell
testified in her deposition that she attempted to help Parsons find counsel to
sue Turley by making “some phone calls to other lawyers that [she] knew and
respected and asked for their recommendations and then followed up on those.” 
Powell also testified that she spoke with Baron about Parsons.  Powell
testified that Baron said that “Greenberg was an excellent lawyer and was also
his lawyer,” meaning that Greenberg “had represented either [Baron] or the law
firm in any number of cases.”

          3. 
No Attorney-Client Relationship

          In
its motion for no-evidence summary judgment, Baron & Budd argued that
Parsons had no evidence of a duty owed to him by Baron & Budd.  “In a
general sense, an attorney-client relationship arises from a lawyer’s agreement
to render professional services to a client.”  Valls v. Johanson &
Fairless, L.L.P., 314 S.W.3d 624, 633 (Tex. App.—Houston [14th Dist.] 2010,
no pet.) (citing Greene’s Pressure Treating & Rentals, Inc. v. Fulbright
& Jaworski, L.L.P., 178 S.W.3d 40, 43 (Tex. App.—Houston [1st Dist.]
2005, no pet.)).  That agreement may be implied from the parties’ conduct, but
“[w]hether the agreement is express or implied, however, there still must be
some manifestation that both parties intended to create an
attorney-client relationship; therefore, one party’s mistaken belief is not
sufficient, by itself.”  Id. at 634.  

Parsons
presented no evidence of an implied legal services contract or attorney-client
relationship between himself and Baron & Budd.  Baron’s only conduct toward
Parsons was to listen to Parsons’s complaints about Turley over lunch and to
tell Powell that “Greenberg was an excellent lawyer and was also his lawyer.” 
Powell understood this to mean that Greenberg “had represented either [Baron]
or the law firm in any number of cases.”  Neither of these occurrences suggests
an intention or agreement by Baron to enter into an attorney-client
relationship with Parsons.  Rather than evidence of conduct by Baron, the bulk of
Parsons’s evidence relates to statements made to him by Greenberg or his own
subjective beliefs about his relationship with Baron & Budd.  

Parsons
argues that he presented evidence of a legal services contract with Baron &
Budd because (1) he asked Baron for a referral; (2) Baron accepted his request
by making a referral to Greenberg; and (3) this “contract” was supported by two
forms of consideration:  (a) Parsons’s retention of Greenberg to handle the
Turley Litigation “strengthened the Baron & Budd-Greenberg relationship and
better positioned Greenberg to continue his work for the firm” and (2) Baron
& Budd’s right to enter into a referral fee contract with Greenberg.
However, Parsons did not make this argument to the trial court in his pro se
response to Baron & Budd’s motion for summary judgment.  Therefore, Parsons
cannot rely on this argument as a basis for reversing the trial court’s summary
judgment.  See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 679 (Tex. 1979); see also Tex. R. Civ. P. 166a(c) (“Issues not
expressly presented to the trial court by written motion, answer or other
response shall not be considered on appeal as grounds for reversal.”
(emphasis added)).  

Parsons
also argues that even if Baron & Budd did not represent him “for the
referral and thereafter,” Baron & Budd negligently failed to inform him of
its non-representation.[8]  However, negligent failure
to inform of non-representation was not pleaded in Parsons’s fourth amended
petition, nor did Parsons make this argument in his pro se response to the
motion for summary judgment.  See Clear Creek Basin Auth., 589 S.W.2d at
679; see also Tex. R. Civ. P. 166a(c).  We hold that the trial court did
not err by granting Baron & Budd’s no-evidence motion for summary judgment
on Parsons’s negligence claims.

          4. 
No Respondeat Superior Liability

          Parsons
further contends that the trial court erred by granting summary judgment
against him on his assertion that Baron & Budd had respondeat superior
liability for Greenberg’s negligence.  In its traditional motion for summary
judgment, Baron & Budd included a section in which it argued that it had no
liability for the alleged acts or omissions of Greenberg or his firm.  And
Baron & Budd attached to its motion for summary judgment an affidavit by
Greenberg that established as a matter of law that he was not an employee,
shareholder, partner, or member of Baron & Budd; that Baron & Budd had
not controlled and did not control his legal work; that he was not acting as an
agent of Baron & Budd when representing Parsons in the Turley Litigation;
that no one from Baron & Budd conferred upon him actual or apparent
authority to act as its agent in the Turley Litigation; that his law firm is
and was a separate legal entity unrelated to Baron & Budd; and that any
agency relationship he had with Baron & Budd related only to his
representation of Baron & Budd in unrelated matters.[9] 
This evidence established Baron & Budd’s right to judgment as a matter of
law because it affirmatively disproved any employment or agency relationship.  See
generally Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 312
(Tex. 2002); Baptist Mem’l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947
(Tex. 1998).  Parsons’s pro se response did not address Baron & Budd’s respondeat
superior argument, nor did it include evidence creating a genuine issue of
material fact on the issue. Therefore, the trial court did not err by granting
summary judgment on Parsons’s respondeat superior claim.  We overrule Parsons’s
first six issues.[10] 

B.  Parsons’s Remaining Claims

          In
issues eight through twelve, Parsons argues that the trial court erred by
granting summary judgment on his claims for breach of fiduciary duty, and he
argues that his alleged legal services contract with Baron & Budd “created
an attorney-client relationship that in turn underpins the firm’s fiduciary
duties.”  We held above, however, that the trial court did not err by granting
Baron & Budd’s motion for no-evidence summary judgment because Parsons
presented no evidence of an attorney-client relationship between himself and
Baron & Budd.  Thus, there was also no fiduciary relationship between
Parsons and Baron & Budd, and the trial court did not err by granting
summary judgment against Parsons on this claim.[11] 
We overrule issues eight through twelve.

In
his thirteenth issue, Parsons challenges the summary judgment on his fraud,
conspiracy to defraud, and unjust enrichment claims.  One element of Parsons’s
fraud claim is that Baron & Budd made a false representation to Parsons
that it knew was false or that it made recklessly without any knowledge of the
truth.  See, e.g., Johnson & Higgins of Tex., Inc. v. Kenneco Energy,
Inc., 962 S.W.2d 507, 524 (Tex. 1998).  Parsons argued in his summary
judgment response that “by virtue of their long association and close
friendship, Baron either knew the representation [that Greenberg was a
qualified and able attorney] was false or made it recklessly without truth of
its assertion.”  However, nothing in the summary judgment record suggests that
either Baron or Baron & Budd had any belief or indication that Greenberg
was not a qualified and able attorney.  To the contrary, the only reasonable
inference from the summary judgment evidence is that Baron & Budd believed
Greenberg to be qualified and able because it used Greenberg as its own
counsel.  Parsons therefore failed to present evidence raising a genuine issue
of material fact on this element of his fraud claim or the related conspiracy
to defraud claim, and we hold that the trial court did not err by granting
summary judgment on these claims.  

Finally,
Parsons predicated his unjust enrichment claim on his causes of action for
fraud and breach of fiduciary duty.[12]  Because we have held
that the trial court did not err by granting summary judgment against Parsons’s
fraud and fiduciary duty claims, we also hold that the trial court did not err
by granting summary judgment on his claim for unjust enrichment.  We overrule
Parsons’s thirteenth issue.

V. 
Trial Court Recusal

          In
his fourteenth and fifteenth issues, Parsons argues that Judge Melody Wilkinson
should have been disqualified from presiding over his lawsuit, and he contends
that he presented “reasonable grounds for questioning Judge Wilkinson’s
qualifications and impartiality.”  In addition, Parsons argues that Judge
Wilkinson’s alleged lack of impartiality “could have affected her judgment
regarding whether the deadline for [his] expert designations should have been
increased from the two months that remained when [his] attorney was allowed to
withdraw.”  This court previously addressed Parsons’s motion to disqualify
Judge Wilkinson from the underlying litigation when Parsons appealed the
summary judgment in favor of Turley.  See Parsons v. Turley, No.
02-09-00381-CV, 2010 WL 5187704, at *3–4 (Tex. App.—Fort Worth Dec. 23, 2010, no
pet. h.) (mem. op.).  We overrule Parsons’s fourteenth and fifteenth issues for
the reasons stated in our previous opinion.[13]  See id.

VI. 
Conclusion

          Having
overruled each of Parsons’s dispositive issues, we affirm the trial court’s
judgment.  See Tex. R. App. P. 47.1.

 

 

ANNE GARDNER
JUSTICE



 

PANEL: 
GARDNER,
WALKER, and GABRIEL, JJ.

 

DELIVERED:  August 11, 2011









[1]See Tex. R. App. P. 47.4.





[2]Also pending before the
court are two post-submission motions filed by Parsons.  Each motion is
addressed within this opinion.





[3]Kevin Queenan was
Parsons’s attorney when he filed his original petition in this case, but
Queenan was permitted to withdraw shortly after Parsons filed his pro se third
amended petition.





[4]Parsons filed his original
response to the motion for summary judgment on May 29, 2009.  He later filed an
amended response that was mailed to the trial court more than seven days before
the summary judgment hearing but filed within seven days of the hearing on July
20, 2009; the July 20, 2009 amended response was therefore timely.  See
Tex. R. Civ. P. 5, 166a(c).  Parsons filed another amended response the day
before the summary judgment hearing, but it was untimely.  See Tex. R.
Civ. P. 166a(c).  The July 20, 2009 amended response to Baron & Budd’s
motion for summary judgment is the response that we have reviewed in this
appeal.  In that regard, we deny as moot Parsons’s post-submission “Motion that
the court rule that it should fully consider and rule upon points of error ‘2a’
and ‘2b,’ as addressed in [Parsons]’s Reply Brief.”  Because these arguments relating
to the timeliness of the July 20, 2009 response were made in Parsons’s reply
brief, they were already before this court at the time of the post-submission
brief.   





[5]Parsons’s statement of
issues lists separate causes of action for misrepresentation and fraud, but he
treats them as one cause of action in his argument section, just as he did in
the trial court.  We thus address misrepresentation and fraud as one cause of
action, and we address Parsons’s claims for unjust enrichment and constructive
trust as one for the same reason. However, we express no opinion as to whether
misrepresentation and fraud or unjust enrichment and constructive trust are
separate causes of action. 





[6]Parsons also argues that
the trial court erred by sustaining certain objections to his summary judgment
evidence, but we have reviewed the summary judgment record as if the trial
court did not sustain any of Baron & Budd’s objections.  Thus, we need not
address these arguments.





[7]Parsons also attached his
response to Greenberg’s 2007 motion for summary judgment and asked that the
trial court take judicial notice of his fifth and sixth amended petitions, but
the trial court struck Parsons’s fifth amended petition as it related to Baron
& Budd and denied Parsons’s motion for leave to file the sixth amended
petition.  It is also well-settled that a party generally may not rely on its
own pleadings as summary judgment evidence.  See Laidlaw Waste Sys.
(Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660–61 (Tex. 1995)
(discussing Hidalgo v. Surety Sav. & Loan Ass’n, 462 S.W.2d 540, 545
(Tex. 1971)).





[8]Even in the absence
of an attorney-client relationship, an attorney may be liable for negligently
failing to advise a party that he is not representing the party.  Burnap v.
Linnartz, 914 S.W.2d 142, 148 (Tex. App.—San Antonio 1995, writ denied); Kotzur
v. Kelly, 791 S.W.2d 254, 258 (Tex. App.—Corpus Christi 1990, no writ);
Parker v. Carnahan, 772 S.W.2d 151, 157 (Tex. App.—Texarkana 1989, writ
denied). 





[9]In his sixteenth issue,
Parsons argues that the Lance Pool affidavit, also attached to Baron &
Budd’s motion for summary judgment, should be struck on appeal because it is
not based on Pool’s personal knowledge.  Greenberg’s affidavit, for purposes of
Parsons’s respondeat superior claim, is virtually identical to Pool’s
affidavit.  Thus, we do not reach Parsons’s sixteenth issue.  See Tex.
R. App. P. 47.1.





[10]We need not address Parsons’s
seventh issue, in which he contends that expert testimony was not required to
overcome his summary judgment burden because our holdings are not dependent on
whether Parsons did or did not have expert testimony.  See Tex. R. App.
P. 47.1





[11]Parsons did not argue to
the trial court or in his initial brief in this court that he presented
evidence of an informal fiduciary relationship; the argument is therefore
waived.  See Tex. R. Civ. P. 166a(c); Clear Creek Basin Auth.,
589 S.W.2d at 679; see also Pineridge Assocs., L.P. v. Ridgepine, LLC,
337 S.W.3d 461, 472 n.10 (Tex. App.—Fort Worth 2011, no pet.) (holding
appellant waived argument by making it for the first time in its reply brief).





[12]The entirety of Parsons’s
pro se summary judgment response as to his unjust enrichment claim stated: 
“The Baron Defendant[s] state that the Plaintiff’s unjust enrichment claims is [sic]
predicated upon the fraud and breach of fiduciary duty allegations.  Since
those claims are properly before the Court, the Defendant’s [sic] impliedly
admit this one as well.”





[13]We also deny Parsons’s
post-submission motion that we consider his April 2011 letter brief.  The
letter brief attempts to inject into this appeal matters that occurred during
the trial of Parsons’s claims against Greenberg and Motsenbocker, and none of
the information contained within the April 2011 letter brief would correct the
deficiencies in Parsons’s motion to disqualify Judge Wilkinson.